**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

TAUREZS BULLOCK,

Petitioner,

v. Case No. 8:22-cv-1097-WFJ-AAS

SECRETARY, DEPARTMENT OF CORRECTIONS,

Respondent.
_____________________________________/

**ORDER**

Taurezs Bullock, a Florida prisoner, initiated this action by filing a petition for writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1). Respondent filed a response opposing the petition. (Doc. 9). Mr. Bullock filed a reply. (Doc. 17-1). At the Court's direction, the parties submitted supplemental briefing. (Docs. 22, 27). After careful review, the petition is **DENIED**.

## I. Background

This case arises from a shooting outside a strip club in Pasco County, Florida. On the evening of December 18, 2013, Mr. Bullock arrived at the club with his friends Maxwell Britt and Reginald Sconyers. (Doc. 10-2, Ex. 1a, at 480-81). Another group of friends—David Avant, Allen Michel, and Destinee Serna—was also at the club. (*Id.* at 155-56). The two groups did not speak with each other inside the club, but Mr. Bullock testified that Mr. Avant was "staring at" Mr. Bullock and his friends "real hard" "across the bar." (*Id.* at 533). When the club closed at 2:00 a.m., Mr. Avant and his friends left and

began ordering food from a "grill" in front of the establishment. (*Id.* at 158-69). Soon after, Mr. Bullock exited the club. (*Id.* at 161). "Shortly after that," Mr. Britt followed suit. (*Id.*)

Outside the club, a fistfight broke out between Mr. Britt and Mr. Avant. (*Id.* at 162-63). Approximately four punches were thrown in total, and the two "bear hug[ged]" each other. (*Id.* at 164). A "couple of seconds" after the fight began, Bradley Polanco—a stranger to both sides—broke up the fight and separated Mr. Britt and Mr. Avant. (*Id.* at 165, 212, 286-87). At this point, Mr. Bullock pulled out a handgun and shot Mr. Avant and Mr. Polanco. (*Id.* at 165-68). Mr. Polanco survived his injuries; Mr. Avant died shortly thereafter. (*Id.* at 281-83, 406). Mr. Bullock testified that he fired the shots because he thought Mr. Avant was reaching for a gun "inside of his pockets." (*Id.* at 547). According to Mr. Bullock, he was "scared for [Mr. Britt's] life." (*Id.* at 548). Mr. Bullock admitted, however, that he "never saw a gun." (*Id.* at 574). Apart from the murder weapon, no other firearm was recovered outside the strip club. (*Id.* at 318, 324-25).

Mr. Bullock fled the scene of the shooting. (*Id.* at 551-52). He was charged with second-degree murder and attempted second-degree murder. (*Id.*, Ex. 1, at 6-7). Seven months later, law enforcement apprehended Mr. Bullock in upstate New York. (*Id.*, Ex. 1a, at 422-29). He presented a fake driver's license with the name "Craig Pagen." (*Id.* at 423). Mr. Bullock eventually acknowledged his true identity and said, "I know Florida is looking for me." (*Id.* at 429-30).

Mr. Bullock moved to dismiss the charges under Florida's "stand your ground" law, arguing that his "use of force was justifiable." (*Id.*, Ex. 1b, Appendix A). Following an evidentiary hearing, the trial court denied the motion. (*Id.*, Ex. 1, at 72-76). The case went

to trial, and Mr. Bullock testified in his defense, renewing his claim that the shooting was a justified use of force. (*Id.*, Ex. 1a, at 152-154, 547-48). During direct examination, Mr. Bullock admitted that he had three prior felony convictions. (*Id.* at 557). The jury found him guilty as charged, and the court sentenced him to a total term of life imprisonment. (*Id.*, Ex. 1, at 264-67, 324-31). Mr. Bullock's direct appeal was unsuccessful, as were his efforts to obtain postconviction relief under Florida Rule of Criminal Procedure 3.850. (*Id.*, Exs. 5, 12, 15, 17). This federal habeas petition followed. (Doc. 1).

## II. Standards of Review

### A. AEDPA

The Antiterrorism and Effective Death Penalty Act ("AEDPA") governs this proceeding. *Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1364 (11th Cir. 2009). Habeas relief can be granted only if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254(d) provides that federal habeas relief cannot be granted on a claim adjudicated on the merits in state court unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially

indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A decision involves an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

AEDPA was meant "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Accordingly, "[t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Id.* at 694; *see also Harrington v. Richter*, 562 U.S. 86, 103 (2011) ("As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").

The appellate court in Mr. Bullock's case affirmed the denial of postconviction relief without discussion. This decision warrants deference under § 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir. 2002). When a state appellate court issues a silent affirmance, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

**B. Exhaustion of State Remedies; Procedural Default**

A federal habeas petitioner must exhaust his claims in state court before presenting them in his federal habeas petition. 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."). The exhaustion requirement is satisfied if the petitioner fairly presents his claim in each appropriate state court and alerts that court to the federal nature of the claim. *Picard v. Connor*, 404 U.S. 270, 275-76 (1971).

The doctrine of procedural default provides that "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). A fundamental miscarriage of justice occurs in an extraordinary case where a constitutional violation has probably resulted in the conviction of someone who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003). To establish cause for a procedural default, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). A petitioner demonstrates prejudice by showing that "there is at least a reasonable probability that the result of the proceeding would have been different" absent the constitutional violation. *Henderson*, 353 F.3d at 892.

### C. Ineffective Assistance of Counsel

Mr. Bullock alleges ineffective assistance of trial counsel. Ineffective-assistance-of-counsel claims are analyzed under the test established in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires a showing of deficient performance by counsel and resulting prejudice. *Id*. at 687. Deficient performance is established if, "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id*. at 690. However, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*

Mr. Bullock must show that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691. To demonstrate prejudice, Mr. Bullock must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Obtaining relief on a claim of ineffective assistance of counsel is difficult on federal habeas review because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Richter*, 562 U.S. at 105 (internal quotation and citations omitted); *see also Pooler v. Sec'y, Dep't of Corr.*, 702 F.3d 1252, 1270 (11th Cir. 2012) ("Because we must view Pooler's ineffective counsel claim—which is governed by the deferential *Strickland* test—through the lens of AEDPA

deference, the resulting standard of review is doubly deferential."). "The question [on federal habeas review of an ineffective-assistance claim] 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).

## III. Discussion

### A. Ground One—Failure to Object to Incorrect Jury Instruction

Mr. Bullock argues that trial counsel was ineffective for failing to object when the jury received an incorrect instruction on Florida's stand-your-ground statute. (Doc. 1 at 5). The jury was correctly told that Mr. Bullock could use "deadly force if he reasonably believed that such force was necessary to prevent imminent death or great bodily harm to himself or another or the imminent commission of an aggravated battery or aggravated assault against himself or another." (Doc. 10-2, Ex. 1a, at 815). But the court mistakenly told the jury that Mr. Bullock "had no duty to retreat" if he "was not otherwise engaged in criminal activity." (*Id.*) In fact, at the time of the shooting, Florida law "did not impose a duty to retreat upon a defendant engaged in unlawful activity." *Eady v. State*, 229 So. 3d 434, 437 (Fla. 2d DCA 2017) (emphasis omitted). In other words, a defendant could "assert self-defense by the use of deadly force . . . with no duty to retreat, even if that defendant was engaged in unlawful activity while standing his ground."[1] *Id.*

[1] After the shooting (but before the trial), the Florida legislature amended the stand-your-ground statute to "restrict[] the availability of the defense of justifiable use of deadly force to when the defendant is 'not

Mr. Bullock argues that the erroneous duty-to-retreat instruction was "catastrophic to [his] defense." (Doc. 27 at 10). The jury learned that Mr. Bullock was a convicted felon, and that he fired a gun outside a strip club. (Doc. 10-2, Ex. 1a, at 165, 557). Thus, according to Mr. Bullock, the jury may have wrongly "determined that he was prohibited from claiming the defense of justifiable use of deadly force [because] he was a convicted felon in possession of a firearm." (*Id.*, Ex. 12, at 171).

Even under *de novo* review, this claim fails for lack of prejudice.[2] "The prejudice prong requires the petitioner to establish a reasonable probability that, but for counsel's errors, the outcome at trial would have been different." *Reed v. Sec'y, Fla. Dep't of Corr.*, 767 F.3d 1252, 1261 (11th Cir. 2014). "It is not enough for the [petitioner] to show that the errors had some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. Instead, "counsel's errors [must be] so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable." *Id.* at 687. "This does not require a showing that counsel's actions more likely than not altered the outcome, but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters only in the rarest case." *Richter*, 562 U.S. at 111-12. "The likelihood of a different result must be substantial, not just conceivable." *Id.* at 112.

---

engaged in a criminal activity' and is 'in a place where he . . . ha[d] a right to be.'" *Bolduc v. State*, 279 So. 3d 768, 770 (Fla. 2d DCA 2019). This amendment did not apply to Mr. Bullock's case "because it represented a substantive change in the law." *Id.*

[2] The parties dispute whether AEDPA deference applies to the state court's rejection of this claim. (Docs. 22, 27). The Court need not decide that issue because even if Ground One were "eligible for *de novo* review, it would still fail." *Knowles*, 556 U.S. at 123.

Mr. Bullock cannot meet his "demanding burden" of showing prejudice from the erroneous instruction. *Pye v. Warden, Ga. Diagnostic Prison*, 50 F.4th 1025, 1041 (11th Cir. 2022). As noted above, the jury was incorrectly told that Mr. Bullock had a duty to retreat if he was "engaged in criminal activity." (Doc. 10-2, Ex. 1a, at 815). In fact, Mr. Bullock could "assert self-defense by the use of deadly force . . . with no duty to retreat, even if [he] was engaged in unlawful activity while standing his ground." *Eady*, 229 So. 3d at 437. Despite the erroneous instruction, there is no indication that the jury believed Mr. Bullock engaged in unlawful activity by possessing a firearm. To be sure, the jury learned that Mr. Bullock was a convicted felon who fired a gun outside a strip club. (Doc. 10-2, Ex. 1a, at 165, 557). But the prosecution never presented any evidence or argument that Mr. Bullock violated the law by possessing a firearm. Nor was the jury told that Florida law criminalizes possession of a firearm by a felon. It is "conceivable" that the jury independently determined that Mr. Bullock's firearm possession was unlawful, but this bare possibility is not "substantial" enough to demonstrate *Strickland* prejudice.[3] *Richter*, 562 U.S. at 112.

Moreover, the prosecution did not argue in closing that Mr. Bullock had a duty to retreat. To the contrary, the prosecution *conceded* that Mr. Bullock "doesn't have to retreat" and could "use deadly force if that's what has to be used." (Doc. 10-2, Ex. 1a, at 718). Instead of arguing that Mr. Bullock had a duty to retreat, the prosecution challenged the reasonableness of his use of deadly force: "Ending a fistfight that was already over with

[3] The jury did not ask the court any questions during deliberations.

a gun because you imagined threats is not reasonable and, therefore, it is not justified." (*Id.* at 722). Likewise, defense counsel never mentioned the duty to retreat in his closing argument. Rather, counsel maintained that Mr. Bullock "reasonably believed that [deadly] force was necessary to prevent imminent death or great bodily harm to" Mr. Britt. (*Id.* at 759-62). On this record, there is no "reasonable probability" that, but for counsel's failure to object to the duty-to-retreat instruction, the jury would have found Mr. Bullock was justified in using deadly force. *Reed*, 767 F.3d at 1261; *see also Rosario v. Sec'y, Fla. Dep't of Corr.*, No. 22-12574, 2023 WL 8801497, at *3 (11th Cir. Dec. 20, 2023) (state court reasonably found no prejudice from erroneous duty-to-retreat instruction because "[t]he lawyers' closing arguments did not highlight the [erroneous] instruction," and the prosecution "did not argue that [petitioner] could not defend himself or was required to retreat because he was part of an unlawful activity").

### B. Ground Two—Failure to Request Instruction on Heat-of-Passion Defense

Mr. Bullock faults trial counsel for failing to request a jury instruction on the "heat of passion" defense. (Doc. 1 at 7). That defense excuses a homicide "if the killing occurs by accident and misfortune in the heat of passion, upon any sudden and sufficient provocation." *Villella v. State*, 833 So. 2d 192, 195 (Fla. 5th DCA 2002) (citing Fla. Stat. § 782.03). According to Mr. Bullock, counsel should have informed him that "the facts of his case . . . warrant[ed] a heat-of-passion defense." (Doc. 10-2, Ex. 12, at 46). Had he received such advice, Mr. Bullock allegedly would have "insisted that the jury be instructed" on "this plausible defense." (*Id.*)

The postconviction court rejected this claim, finding that counsel was not "ineffective" for failing to pursue a heat-of-passion defense. (*Id.* at 67). Citing Florida law, the court explained that "killing in the 'heat of passion' occurs when the state of mind of the slayer is necessarily different from that when the killing is done in self-defense." (*Id.* (quoting *Disney v. State*, 73 So. 598, 601 (Fla. 1916))). Specifically, "[i]n the heat of passion the slayer is oblivious to his real or apparent situation. Whether he believes or does not believe that he is in danger is immaterial; it has no bearing upon the question." (*Id.* (quoting *Disney*, 73 So. at 601)). Applying this precedent, the court held that the evidence at trial did "not support a 'heat of passion' theory of defense." (*Id.* at 68). According to the court, "the only evidence about [Mr. Bullock's] state of mind at the time, from [his] own testimony, was that he was 'scared for [Mr. Britt's] life because earlier [he saw Mr. Avant] fidgeting' and believed that [Mr. Avant] was going to pull out a gun." (*Id.* (citation omitted)). Moreover, Mr. Bullock "explained that he shot at [Mr. Avant] until he 'felt he wasn't a threat.'" (*Id.* (citation omitted)). Thus, counsel did not "fail the standards set for effective counsel" by advising Mr. Bullock that he "could not succeed" on a heat-of-passion defense. (*Id.* at 67).

This ruling was reasonable. "[A]lthough the issue of ineffective assistance . . . is one of constitutional dimension," a federal court "must defer to the state's construction of its own law when the validity of the [ineffective-assistance] claim . . . turns on state law." *Pinkney v. Sec'y, DOC*, 876 F.3d 1290, 1295 (11th Cir. 2017). Such deference is required here. The postconviction court held that counsel was not deficient because, under Florida law, the evidence at trial did "not support a 'heat of passion' theory of defense." (Doc. 10-

2, Ex. 12, at 68). Thus, the postconviction court "already has told us how the issue[] would have been resolved under Florida state law had [counsel] done what [Mr. Bullock] argues he should have done." *Herring v. Sec'y. Dep't of Corr.*, 397 F.3d 1338, 1354-55 (11th Cir. 2005). That determination is binding on federal habeas review. *See Mondesir v. Sec'y, Dep't of Corr.*, No. 21-10868, 2022 WL 6645476, at *2 (11th Cir. Oct. 11, 2022) ("The state trial court concluded that [petitioner] did not have a viable [heat-of-passion] defense under Florida law, and we defer to its interpretation of state law.").

Because the postconviction court "authoritatively decided as a matter of [Florida] law" that the evidence did not support a heat-of-passion defense, the remainder of the analysis is straightforward. *Calhoun v. Warden, Baldwin State Prison*, 92 F.4th 1338, 1351 (11th Cir. 2024). "[I]t is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance." *Bolender v. Singletary*, 16 F.3d 1547, 1573 (11th Cir. 1994). Thus, the postconviction court reasonably concluded that counsel was not deficient for failing to request a heat-of-passion instruction or otherwise pursue the defense at trial.[4]

### C. Ground Three—Failure to Retain Expert in Support of Heat-of-Passion Defense

Lastly, Mr. Bullock argues that trial counsel should have hired a "forensic psychologist to evaluate [Mr. Bullock] and testify at his trial concerning the elements of

[4] Contrary to Respondent's assertion, Mr. Bullock fully exhausted this claim. In his Rule 3.850 motion, he argued that counsel was ineffective for failing to inform him that the "facts warrant[ed] a heat of passion instruction," and that but for counsel's error, he would have "insisted that the jury be [so] instructed." (Doc. 10-2, Ex. 12, at 46). Mr. Bullock challenged the rejection of this claim on appeal, arguing that he was "deprived of his right to the effective assistance of counsel by his trial counsel's failure to request a jury instruction on heat of passion." (*Id.*, Ex. 13, at 24). Thus, Mr. Bullock presented the "substance" of his claim to the state courts. *Kelley v. Sec'y for Dep't of Corr.*, 377 F.3d 1317, 1344 (11th Cir. 2004).

heat of passion." (Doc. 1 at 10). According to Mr. Bullock, a "forensic psychologist would have been able to evaluate [him] and explain that in certain situations, fear can lead to anger which is precisely what happened in the instant case." (*Id.*) Mr. Bullock claims that, had counsel retained such an expert and pursued a heat-of-passion defense, he "would not have been found guilty." (*Id.*)

Mr. Bullock correctly concedes that this claim is procedurally defaulted because he failed to raise it in state court. (*Id.*) Thus, he cannot obtain relief "unless [he] can demonstrate cause for the default and actual prejudice, or that he is actually innocent." *Gore v. Crews*, 720 F.3d 811, 816 (11th Cir. 2013). Mr. Bullock seeks to excuse the default under *Martinez v. Ryan*, 566 U.S. 1 (2012). *Martinez* held that a petitioner may establish cause for the default of a claim of ineffective assistance of trial counsel where (1) "in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective," and (2) the defaulted claim is a "substantial one," meaning that it "has some merit." *Martinez*, 566 U.S. at 14, 17. A claim is "insubstantial" if it is "wholly without factual support." *Id.* at 16.

*Martinez* does not excuse the default because Mr. Bullock's ineffective-assistance claim is not "substantial." *Id.* at 14. This conclusion follows from the Supreme Court's decision in *Shinn v. Ramirez*, which significantly restricted *Martinez*'s scope. 596 U.S. 366 (2022). *Shinn* held that, unless a petitioner satisfies § 2254(e)(2), a federal court cannot consider evidence outside the state-court record "to assess cause and prejudice under *Martinez*." *Id.* at 389. Section 2254(e)(2), in turn, imposes "stringent requirements" on a petitioner seeking to expand the state-court record. *Id.* It states that if a petitioner "failed to

develop the factual basis of a claim in State court proceedings," a federal court cannot consider new evidence unless the claim relies on either (1) "a new rule of constitutional law" or (2) "a factual predicate that could not have been previously discovered through the exercise of due diligence." 28 U.S.C. § 2254(e)(2). Even if a petitioner satisfies either of these exceptions, he still must show that further factfinding would establish, "by clear and convincing evidence," that "no reasonable factfinder" would have convicted him of the charged offense. *Id.* § 2254(e)(2)(B).

*Shinn* forecloses relief on Mr. Bullock's ineffective-assistance claim. The state-court record contains no evidence about counsel's failure to hire a "forensic psychologist" in support of a heat-of-passion defense. (Doc. 10-2). Thus, Mr. Bullock's claim necessarily relies on evidence that was not presented in state court. But § 2254(e)(2) bars this Court from considering any new evidence. As noted above, § 2254(e)(2) applies to petitioners who "failed to develop the factual basis of [their] claim in State court proceedings." 28 U.S.C. § 2254(e)(2). "[A] failure to develop the factual basis of a claim is not established unless there is lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." *Williams v. Taylor*, 529 U.S. 420, 432 (2000). "Diligence," as used in § 2254(e)(2), "depends upon whether the prisoner made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court." *Id.* at 435.

Mr. Bullock failed to diligently pursue his ineffective-assistance claim in state court. He raised several claims in his Rule 3.850 motion. But he did not bring the claim he seeks to pursue now—namely, that counsel should have hired a forensic psychologist to support

a heat-of-passion defense. (Doc. 10-2, Ex. 12, at 34-57). Indeed, at no point in the Rule 3.850 proceedings did Mr. Bullock allege that counsel was deficient on this basis. Because Mr. Bullock did not make "a reasonable attempt to investigate and pursue his ineffective assistance of counsel claim in state court," that claim is subject to § 2254(e)(2). *McNair*, 416 F.3d at 1298; *see also Will v. Sec'y, Dep't of Corr.*, 278 F. App'x 902, 907 (11th Cir. 2008) (petitioner "did not sufficiently develop the factual basis of [his] claim in state court" under § 2254(e)(2) because he never "raise[d] before the state habeas court his claim that his trial counsel was ineffective for failing to move to suppress his confession on the basis that he requested, but was refused, counsel during an unrecorded break in his interrogation").

Mr. Bullock cannot satisfy § 2254(e)(2)'s stringent requirements. His ineffective-assistance claim does not rely on "a new rule of constitutional law." 28 U.S.C. § 2254(e)(2)(A)(i). Nor is there any indication that the "factual predicate" for his claim—counsel's failure to hire a forensic psychologist—"could not have been previously discovered through the exercise of due diligence." *Id.* § 2254(e)(2)(A)(ii). Finally, Mr. Bullock fails to show that further factfinding on his claim would establish, "by clear and convincing evidence," that "no reasonable factfinder" would have convicted him of second-degree murder and attempted second-degree murder. *Id.* § 2254(e)(2)(B).

Thus, Mr. Bullock cannot prevail unless he shows that his ineffective-assistance claim is "substantial" "considering only the state-court record." *Williams v. Superintendent Mahanoy SCI*, 45 F.4th 713, 724 (3d Cir. 2022); *see also Rogers v. Mays*, 69 F.4th 381, 397 (6th Cir. 2023) (noting that the state-court record contained "all the evidence we can

consider" under *Martinez* because petitioner "ha[d] not satisfied § 2254(e)(2)"); *Apolonio v. Sec'y, Dep't of Corr.*, No. 21-12297, 2022 WL 17411282, at *5 (11th Cir. Dec. 5, 2022) ("We cannot consider [petitioner's] new factual allegation as evidence supporting [his] ineffective-assistance claim because [he] has not satisfied the requirements for a federal evidentiary hearing under 28 U.S.C. § 2254(e)(2)."); *Grace v. Sec'y*, No. 8:21-cv-621-MSS-AEP, 2024 WL 492991, at *11 (M.D. Fla. Feb. 8, 2024) (holding that, because petitioner failed to "meet his heavy burden under [§] 2254(e)(2)," he "must demonstrate deficient performance and prejudice . . . based on the state-court record"). Mr. Bullock cannot make this showing because his claim finds no support in the state-court record. Therefore, *Martinez* does not excuse the default.

Even if the Court could look beyond the state-court record, Mr. Bullock would not be entitled to relief under *Martinez* because he presents no evidence in support of his claim. Mr. Bullock fails to identify any "forensic psychologist" who could have provided the testimony he describes. (Doc. 1 at 10). Nor has he shown that any expert "actually reviewed the evidence in his case." *Finch v. Sec'y, Dep't of Corr.*, 643 F. App'x 848, 852 (11th Cir. 2016). "Without some specificity as to the proposed expert's testimony, any assertion that an expert would testify consistently with [Mr. Bullock's] claims is mere speculation and does not entitle him to habeas relief." *Id.* Simply put, Mr. Bullock's speculative allegations are insufficient to establish deficient performance or prejudice. *See, e.g., Holt v. Sec'y, Fla. Dep't of Corr.*, 489 F. App'x 336, 338 (11th Cir. 2012) (state court reasonably rejected ineffective-assistance claim based on failure to retain expert because "[i]t [was] speculative that an expert witness would in fact have testified" favorably to the defense); *Jimenez v.*

*Sec'y, Dep't of Corr.*, No. 8:19-cv-684-MSS-AEP, 2021 WL 5416150, at *9 (M.D. Fla. Nov. 19, 2021) ("[I]n his post-conviction motion, [petitioner] neither identified an expert who could have testified [favorably to the defense] nor presented an affidavit or testimony to substantiate that testimony. Because [petitioner's] ineffective assistance of counsel claim was speculative, the state court did not unreasonably deny the claim."). Therefore, because Mr. Bullock's ineffective-assistance claim is "wholly without factual support," *Martinez* does not excuse the default. *Martinez*, 566 U.S. at 16.

## IV. Conclusion

Accordingly, the Court **ORDERS**:

1. Mr. Bullock's petition (Doc. 1) is **DENIED**.
2. Respondent's request to dismiss the Attorney General from this action, (Doc. 9 at 2), is **GRANTED**.[5]
3. The **CLERK** is directed to enter judgment against Mr. Bullock and to **CLOSE** this case.
4. Mr. Bullock is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To obtain a certificate of appealability, Mr. Bullock

[5] The proper respondent in a § 2254 action is "the chief officer in charge of the state penal institution," not the Attorney General. *Gross v. Sec'y, Dep't of Corr.*, No. 2:10-cv-256-JES-DNF, 2013 WL 2477086, at *9 n.1 (M.D. Fla. June 10, 2013).

must show that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues he seeks to raise. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Mr. Bullock has not made the requisite showing. Because Mr. Bullock is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

**DONE AND ORDERED** in Tampa, Florida, on December 3, 2025.

**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**